## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LUKE FONTANA,** | * | **CASE NO. 2:21-CV-00326-LMA-DPC** |
| **Plaintiff** | | |
| | * | **DISTRICT JUDGE: LANCE M.  AFRICK** |
| **VERSUS** | | |
| | * | **MAGISTRATE JUDGE:** |
| | | **DONNA PHILLIPS CURRAULT** |
| | * | |
| **MAYOR LATOYA CANTRELL,** | | |
| **ET AL,** | * | |
| **Defendants** | | |

* * * * * * * * * * * * * * *

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS UNDER RULE 12(B)(1) FOR LACK OF SUBJECT MATTER JURISDICTION AND UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

MAY IT PLEASE THE COURT:

Defendants, Mayor LaToya Cantrell, Dr. Jennifer Avegno, Gilbert Montano, and the City of New Orleans ("City Defendants"), respectfully submits this Memorandum in Support of their Motion to Dismiss.  Plaintiff Luke Fontana appears to allege that the City's COVID-19-related Emergency Proclamations violated various provisions of the U.S. and Louisiana Constitutions and federal and state statutes. The City Defendants file this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In his Second Amended Complaint (R. Doc 34-2), Plaintiff, Luke Fontana, alleges that the City's COVID-19-related Emergency Proclamations violated various provisions of the U.S. and Louisiana Constitutions and federal and state statutes. As remedy for these alleged violations, Plaintiff seeks a declaratory judgment, the appointment of a "Special Master" regarding how Jazz Fest will be conducted in the future, and, though unclear, a possible claim for damages.

The Second Amended Complaint should be dismissed.  Plaintiff's claims are moot, he does not have standing under Article III of the U.S. Constitution, and the Eleventh Amendment bars his claims as a matter of law. Plaintiff fails to allege that actions of the Defendants are the cause of any purported harm.  Based on the allegations in the Complaint, Plaintiff cannot overcome the highly deferential scrutiny standard applicable to state action during a public health crisis.  Lastly, there is no legal support for Plaintiff's claims.

## **BACKGROUND**

Plaintiff alleges that he is an artist, musician, photographer, and holder of a short-term rental permit for property located in the City of New Orleans.[1] On February 12, 2021, Plaintiff, a licensed attorney but proceeding *pro se*, filed his Complaint against the City Defendants challenging certain COVID-19-related restrictions imposed during the 2021 Mardi Gras season.[2] Plaintiff also moved for a temporary restraining order and preliminary injunction to enjoin the enforcement of these restrictions.[3] The Court denied Plaintiff's requested injunctive relief on February 15 due to his failure to provide a Rule 65(b) certification.[4] Plaintiff filed his Amended Complaint an February 18, adding new allegations, claims, and parties.[5]  Plaintiff sought and was granted leave to file a second amended complaint in which he dismissed Governor Jon Bell Edwards as a defendant and to purportedly "clarify the clarify the dispute between the parties."[6] The request was granted on May 19, 2021.[7]

---

[1] *See* Plaintiff's Amended Complaint, R. Doc. 5, at 3, ¶ 8, 12, ¶ 55.
[2] *See* Plaintiff's Complaint, R. Doc. 1;
[3] *See* Plaintiff's Motion for TRO and Preliminary Injunction, R. Doc. 2.
[4] *See* Order on Plaintiff's Motion for TRO and Preliminary Injunction, R. Doc. 4.
[5] *See* Plaintiff's Amended Complaint, R. Doc. 5.
[6] *See* Plaintiff's Motion for Leave to File Second Amend, R. Doc. 34.
[7] *See* May 19, 2021 Order, R. Doc. 36.

Plaintiff's pleadings, including his Original Complaint and Amended Complaints (collectively, the "Complaint"), name the City Defendants in a sprawling, incoherent, and rambling generalized complaint.[8] In the complaint, Plaintiff appears to take issue with public health measures undertaken in response to the COVID-19 pandemic.  Further, the Plaintiff appears to contend that these measures are part of a larger conspiracy orchestrated by local, national figures, and international figures. Despite Plaintiffs stated attempt at clarifying the issues, the petition remains so utterly vague and shambolic that the City Defendants are left to guess exactly what is being asserted.  For example, Plaintiff twice asks the Court to grant relief in favor of Plaintiff and others "similarly situated"[9] but has not pleaded any class allegations pursuant to Rule 23. Throughout the six counts set forth in the petition, the Plaintiff fails to identify any specific action undertaken by the City Defendants  to which he objects.[10] In fact, the only law specifically identified in the counts are those of Governor Jon Bell Edwards, who has been dismissed from this matter.[11] Despite this, in his Prayer for Relief, Plaintiff requests a declaration that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 violates the Louisiana and United States Constitution.  Lastly, the second prayed for relief is an incomplete sentence requesting that this Court "Declare that the Defendants [sic] acts violate the."

Perhaps Plaintiff takes exception to the Public Health Guidelines that the City implemented in response to the pandemic.  Though the City Defendants should not be required to guess as to what Plaintiff complains, the City would like to stress that as the pandemic has worn on, the City has continued to adapt its pandemic policies to changing statistics and scientific knowledge.[12]

---

[8] This is the third lawsuit filed by Plaintiff, the first in the East District, all alleging similar "facts."  *See Fontana v. Cantrell*, CDC #20-05561, and *Fontana v. The Roman Catholic Church, Et. Al.,* CDC #20-10743.
[9] *Supra*, Note 7.
[10] *Id.* pp. 15-24.
[11] *Id.*
[12] *N.O. Catering v.* Cantrell, 2021 WL 795979 (E.D. La. March 2, 2021).

Today, due in part to the City's diligent efforts at combatting the spread of the virus and availability of the coronavirus vaccine, almost every restriction has been lifted in the City of New Orleans.[13]

Despite failing to identify any particular order enacted by the City Defendants which allegedly violated his rights, Plaintiff makes unspecified assertions that the City Defendants violated his and others rights to assemble under the First Amendment, and Eighth Amendment claim, and a claim under the Ninth Amendment.[14]  Plaintiff does so without any explanation. The Complaint lacks any facts in support of these alleged violations, which are pled in a conclusory fashion and not as separate causes of action.[15]

Plaintiff then proceeds to identify individual causes of action.  Count 1 alleges that the City Defendants are liable under 42 U.S.C.  § 1983.[16] Count 2 alleges that Governor's Public Health Order, and not those of the City, amounts to a taking without just compensation in violation of the under the Fifth Amendment to the U.S. Constitution.[17] Plaintiff further asserts that the Governor's order "worked to deprive numerous residents, including some of the Plaintiff . . . of their property interests" and "caused a diminution or loss in value of that property."[18]  Count 3 alleges that Governor's Order, and not the City's, is "causing citizens of New Orleans to lose their jobs."[19] The complaint also erroneously alleges that the City Defendants issued the Governor's order and that it constitutes "arbitrary, capricious, irrational and abusive conduct that interferes with Plaintiff's liberty and property interests protected by due process of law."[20] Plaintiff asserts that

---

[13] Exhibit 1.
[14] *Supra,* Note 7 at 14.
[15] While the complaint also appears to vaguely refer to state law claims, they lack such specificity as to make them undiscernible.
[16] *Id.* at 17.
[17] *Id.*
[18] *Id.*
[19] *Id.* at 19.
[20] *Id.* at 18.

Governor's order interferes with his alleged "right to pursue lawful employment as [Plaintiff] shall determine and be free of governmental interference."[21]

Count 4 alleges that the Governor's Order, and not those of the City Defendants, deprives Plaintiff of his fundamental property rights "based solely upon discretion" and without procedural due process protections.[22] Count 5 appears to either reiterate Plaintiff's substantive due process claim alleged in Count 3 or to allege claims that unspecified executive proclamations violate his procedural due process rights and further alleges that he has a "protected liberty interest in the right to live without arbitrary government interference."[23]

Count 6 alleges that unidentified "Executive Orders" issued by either the Governor or the City Defendants violate the Dormant Commerce Clause of the U.S. Constitution.[24] Plaintiff appears to complain, specifically, that the 11 p.m. "curfew" on alcohol sales at bars and restaurants, as well as the cancellation of the New Orleans Jazz and Heritage Festival and Mardi Gras parades, discriminates against and unreasonably burdens interstate commerce.[25] According to Plaintiff, tourists generally "visit the City of New Orleans for the culture, music, restaurants, and bars,"[26] but due to the COVID restrictions, certain unnamed "tourists" do not want to visit the City, thereby possibly depriving him of potential income from Airbnb rentals.[27] As noted above, Plaintiff requests a declaration that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 violates the Louisiana and United States Constitution.[28] The second prayed for relief is an incomplete sentence requesting that this Court "Declare that the Defendants [sic] acts violate

---

[21] *Id.* at 19.
[22] *Id.* at 20.
[23] *Id.*
[24] *Id.* at 21.
[25] *Id.* at 21-24.
[26] *Id.* at 21.
[27] *Id.*
[28] *Id.* at 24.

the."[29]  Lastly, the Plaintiff also appears to be requesting that this Court appoint a "Special Master to determine whether or not the annual New Orleans Jazz Festival should be held in a similar style as previous years."[30] As the Complaint is so deficient and fails to allege any viable constitutional violation, as demonstrated below, this Court should dismiss the complaint.

## LAW AND ARGUMENT

### I. This Court Should Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction.

#### A.  Standard for Dismissal Under Rule 12(b)(1).

Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases and controversies.[31] When a lawsuit is barred by the Eleventh Amendment of the U.S. Constitution, the case must be dismissed for lack of subject matter jurisdiction.[32] The Eleventh Amendment operates as a jurisdictional bar to actions in federal court against a state, its agencies, and its officials in their official capacity.[33] Thus, federal courts lack subject matter jurisdiction over suits against a state official in his official capacity, unless the plaintiff's claims meet the requirements set forth in *Ex Parte Young*.[34] Additionally, because a moot case presents no Article III case or controversy, a federal court has no constitutional jurisdiction to resolve the issues it presents.[35] Further, to meet the case-or-controversy requirement at the pleading stage, plaintiffs must clearly allege facts demonstrating that they have standing to sue.[36] When a case becomes

---

[29] *Id.*
[30] *Id.* at 25.
[31] *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015) (citing U.S. CONST., art. III, § 2).
[32] *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 64-65 (1996).
[33] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).
[34] *See Ex Parte Young*, 209 U.S. 123 (1908); *see also Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988) (noting exception recognized in *Ex Parte Young*).
[35] *Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).
[36] *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)

moot or the plaintiff fails to establish Article III standing, the case must be dismissed under Federal

Rule of Civil Procedure 12(b)(1).[37]

### B.  The Eleventh Amendment Bars Plaintiff's Claims.

#### 1. The Eleventh Amendment bars Plaintiff's claims for money damages.

The Eleventh Amendment bars individuals from suing a state, including state officials in

their official capacities, for money damages in federal court.[38] That bar applies to claims regardless

of whether they are based on federal or state law.[39] Because the "impetus of the Eleventh

Amendment" is "the prevention of federal-court judgments that must be paid out of a State's

treasury," both Plaintiff's federal and state claims for money damages cannot proceed,[40] including

his claims for just compensation under the Takings Clause of the Fifth Amendment.[41] As such, the

Eleventh Amendment bars any of Plaintiff's claims for money damages, and the Court should

dismiss those claims for lack of subject matter jurisdiction.

#### 2. The Eleventh Amendment bars Plaintiffs' claims for declaratory relief based on federal law.

The Eleventh Amendment also bars Plaintiff's claims for **retrospective** declaratory relief

based on alleged violations of federal law.[42] While the Supreme Court carved out a narrow

exception to Eleventh Amendment immunity in *Ex Parte Young*,[50] the exception applies only

---

[37] *See* FED. R. CIV. P. 12(b)(1); *see also Whitmore v. Arkansas*, 495 U.S. 149, 154-44 (1990); *Treadwell v. La. Dept. of Corrections*, 2012 WL 1135816, *1 (E.D. La. Mar. 12, 2012) (citing cases).
[38] *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 432, 437 (2004).
[39] *See, e.g., Pennhurst*, 465 U.S. at 102.
[40] *Hess v. Port Auth. Trans Hudson Corp.,* 513 U.S. 30, 48 (1994).
[41] *See Hutto v. South Carolina Retirement Sys.*, 773 F.3d 536, 551-53 (4th Cir. 2014) (noting all courts of appeals have concluded that the Takings Clause did not abrogate Eleventh Amendment immunity and affirming dismissal of takings claims).
[42] *See Pennhurst*, 465 U.S. at 102–03.; *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993) (stating Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"). [50] 209 U.S. 123 (1908).

where the plaintiff seeks *prospective* declaratory or injunctive relief.[43] As noted above, a majority of the enumerated counts against the City Defendants concern the emergency proclamations of Governor Edwards and not the City.  Though this is true, Plaintiff, in other areas of the complaint, appears to raise issues possibly seeking to declare unconstitutional the City's original declaration of emergency identified as Mayoral Proclamation of a State of Emergency Due toCOVID-19, 2020-02449.  Plaintiff appear to be under the mistaken impression that the order itself sets specific mandates or guidelines in response to the pandemic. That is not the case.  Rather, the Proclamation sets forth the powers by which the Mayor may carry out public health orders.[44] The public health guidelines of which Plaintiff appears to complains were made pursuant to Mayoral Proclamation to Promulgate Emergency Orders During the State of Emergency Due to COVID-19, 2020-02602. As local factors and federal guidance changed, the public health guidelines have been superseded along for the easing or tightening of restrictions.  Though unclear, Plaintiff's claims may be concerned with expired and superseded guidelines. The Eleventh Amendment bars these retrospective claims for declaratory relief based on federal law.

  Even assuming *arguendo* that Plaintiff seeks prospective relief, his claims still fail to satisfy the requirements of *Ex Parte Young*.[45]  The Fifth Circuit has held that *Ex Parte Young* requires that (1) the official has "some connection with the enforcement" of the challenged law and (2) the official threatens and is "about to commence proceedings" to enforce the law.[46] The Complaint fails to meet these requirements because Plaintiff has failed to allege that the City Defendants have

---

[43] *See Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir.1998) ("To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect.");

[44] *Exhibit 2*, Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-02449

[45] *Ex Parte Young*, 209 U.S. at 156-57.

[46] *See In re Abbott*, 956 F.3d 696, 708-09 (5th Cir. 2020) ("*Abbott IV*").

threatened or are about to commence enforcement proceeding against Plaintiff. Because Plaintiff's claims for declaratory relief do not satisfy *Ex Parte Young*, the City Defendants are immune from suit, and this Court should dismiss those claims.

### 3. Plaintiff's state law claims are barred by the Eleventh Amendment.

The Eleventh Amendment also bars Plaintiff's state law claims because "a federal court may not grant 'relief against state officials on the basis of state law.'"[47]  The Supreme Court held in *Pennhurst* that "state-law claims brought into federal court under pendent jurisdiction" are likewise "protected by the Eleventh Amendment."[48] As the Fifth Circuit has stated, "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State."[49]  The Fifth Circuit has recently reiterated that, "[u]nder *Pennhurst* . . . [a] federal court may determine [whether] state officials' enforcement of state law violates a *federal* right, but it may not order state officials to conform their conduct to *state* law."[50] Pursuant to *Pennhurst* and *Abbott IV*, the Eleventh Amendment prohibits Plaintiff from asserting claims against the City Defendants in their official capacities for alleged violations of the Louisiana Constitution or state law that may be contained in the petition. Accordingly, for all of these reasons, this Court lacks subject matter jurisdiction to adjudicate Plaintiffs' claims and should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1).

### C. Plaintiff Lacks Article III Standing to Pursue His Claims.

---

[47] *See Abbott IV*, 956 F.3d at720 (citations omitted); *see also Pennhurst*, 465 U.S. at 102.
[48] *See Pennhurst*, 465 U.S. at 120-21.
[49] *Hughes v. Savell*, 902 F.2d 376 (5th Cir. 1990).
[50] *Abbott IV*, 956 F. 3d at 720; *see also McKinley, D.C. v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) ("[S]tate law claims do not implicate federal rights or federal supremacy concerns, the *Young* exception does not apply to *state* law claims brought against the state.").

Plaintiff's Complaint must also be dismissed for lack of Article III standing. To establish Article III standing, a plaintiff bears the burden to show (1) he has "suffered an injury-in-fact," (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant," and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[64] Here, Plaintiff possibly alleges that the Governor's and the City's COVID restrictions have resulted in two injuries: (1) Plaintiff has lost 66% of his short-term rental income from his Airbnb rental property[51] and (2) others, who own various businesses, such as art galleries, bars, restaurants, nightclubs, and casinos, have been forced to close or suffered economic losses.[52] Again, the complained of restrictions are no longer operative, but, regardless, neither of these alleged injuries establishes standing.

First, while Plaintiff's alleged loss of short-term rental income may constitute an injury-in-fact on the face of the Complaint, it is insufficient to establish causation and redressability. Causation requires a showing that the injury is "fairly traceable" to the defendant's conduct and not the result of "the independent action of some third party not before the court."[53] Redressability requires that it "be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[54]

Here, Plaintiff's alleged loss of short-term rental income is not fairly traceable to the City Defendants. Neither Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 nor the current public health guidelines limit the operation of short-term rental property. Any loss of income by Plaintiff was and continues to be heavily dependent on the independent actions of

---

[51] *Id*. at 13-14.
[52] *Id*. at 15.
[53] *Lujan*, 504 U.S. at 560–61 (internal citation omitted).
[54] *Id*. at 561.

third parties as the unnamed "tourists" who allegedly rent his Airbnb were never directly prevented from traveling to the City and booking lodging accommodations. Further, it is too speculative to conclude that Plaintiff's alleged injuries will be alleviated by declaring Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 unconstitutional. Even if no COVID restrictions were imposed on residents or businesses, there is no guarantee or even an indication from Plaintiff's Complaint that more tourists would have chosen to travel to the City amid a global pandemic. Nor is there any guarantee or indication that tourists who choose to visit the City will rent Plaintiff's Airbnb. As such, Plaintiff cannot meet the elements of causation and redressability.

Second, Plaintiff cannot properly rely upon the alleged economic injuries of other residents and business owners to create standing. As a general rule, "one may not claim standing in [court] to vindicate the constitutional rights of some third party."[55] This principle is a prudential, rather than absolute, limit on federal jurisdiction. But, before a party may assert the constitutional rights of another, that party must show his own injury-in-fact sufficient to satisfy the case-or-controversy requirement of Article III.[56] Because Plaintiff personally lacks Article III standing, he cannot assert third-party standing. Further, Plaintiff has not alleged any facts in support of third-party standing, such as his relationship to the person(s) whose rights are being asserted, the ability of that person to advance his own right, or the impact of the litigation on that party's interests.[57] Because Plaintiff lacks Article III standing, this Court should dismiss his Complaint pursuant to Rule 12(b)(1).

## II. This Court Should Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief May Be Granted.

### A. Standard for Dismissal Under Rule 12(b)(6).

---

[55] *Barrows v. Jackson*, 346 U.S. 249, 255 (1953).
[56] *Caplin & Drysdale, Chartered v. United States*, 109 S. Ct. 2646, 2651 n.3 (1989).
[57] *Id.*

11

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."[58] A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[59] In reviewing a Rule 12(b)(6) motion, the court "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."[60]  Although the court must accept well pleaded facts as true, the court is not bound to presume the truth of legal conclusions couched as factual allegations.[61] Dismissal is appropriate where "'the pleadings on their face reveal beyond doubt that the plaintiff[] can prove no set of facts that would entitle [him] to relief,' or if 'an affirmative defense or other bar to relief appears on the face of the complaint.'"[62]

### B.  Plaintiff's Complaint Must Be Dismissed Because the Modified Phase 3 Order Does Not Violate Plaintiff's Constitutional Rights.

In assessing whether Plaintiff can prove that the City Defendants' COVID-related public health guidelines violated the constitution, it is necessary to address the United States Supreme Court's decision in *Jacobson v. Massachusetts*.[63]  There, the Supreme Court rejected a Fourteenth Amendment challenge to a compulsory vaccination law enacted in response to a smallpox epidemic, reasoning that a community has the right "to protect itself against an epidemic of disease which threatens the safety of its members."[64]

---

[58] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[59] *Id*. (quoting *Twombly*, 550 U.S. at 556).
[60] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).
[61] *Iqbal*, 556 U.S. at 678.
[62] *Borskey v. Medtronics, Inc.*, 1998 WL 122602, at *3 (E.D. La. Mar. 18, 1998) (quoting *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991)).
[63] 197 U.S. 11 (1905).
[64] *Id.* at 26.

In *In re Abbott*,[65] the Fifth Circuit applied *Jacobson* to challenges to a COVID-related executive order that impacted abortion rights.   Relying on *Jacobson,* the Fifth Circuit found that "when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'"[66] This Court has since relied on the framework of *Jacobson*, as interpreted in *Abbott*, to reject constitutional challenges to the COVID-19 related restrictions.[67]

Though this is true, the U.S. Supreme Court raised doubts as to *Jacobson's* continuing viability when it decided *Roman Catholic Diocese of Brooklyn v. Cuomo*[68] and applied strict scrutiny to evaluate the plaintiffs' claims that state COVID-19-related restrictions on attendance at religious services violated their rights under the Free Exercise Clause of the First Amendment.[69] The per curium opinion did not, however, explicitly reject or overturn *Jacobson*.   And in a concurring opinion, Justice Gorsuch appeared to concede that *Jacobson* would still apply in the context of non-fundamental rights.[70]

Less than two months after *Roman Catholic Diocese,* the Fifth Circuit decided bar owners' challenge to COVID-related Proclamations in  *Big Tyme Investments*.[71]   There, the Fifth Circuit found that *Roman Catholic Diocese* did not affect its decision because the bar owners asserted a

---

[65] 954 F.3d 772, 777 (5th Cir. 2020) ("*Abbott II*").

[66] *Abbott II*, 954 F.3d at 784-85 (quoting *Jacobson*, 197 U.S. at 31) (other citations omitted).

[67] *See 4 Aces Enters. v. Edwards*, 479 F.Supp.3d 311 (E.D. La. Aug. 17, 2020) (denying request by a group of bar owners to enjoin enforcement of the Governor's COVID-19-related ban on onsite consumption of food or drinks at bars); *910 E Main v. Edwards*, 481 F.Supp.3d 607 (W.D. La. Aug. 21, 2020) (same); *Cangelosi v. Edwards*, 2020 WL

[68] *Cuomo*, ⸺ U.S. ⸺, 141 S. Ct. 63, 208 L.Ed.2d 206 (2020).

[69] *Id*. at 67.

[70] *Id*. at 70 (Gorsuch, J., concurring) ("Jacobson didn't seek to depart from normal legal rules during a pandemic, and it supplies no precedent for doing so. Instead, Jacobson applied what would become the traditional legal test associated with the right at issue.").

[71] 985 F.3d 456 (5th Cir. 2021).

violation of non-fundamental rights only.[72] The Fifth Circuit thus relied principally on *Abbott II* and its reading of *Jacobson* to affirm the district courts' orders declining to enjoin the onsite consumption ban at bars.[73] On January 25, 2021, however, the Supreme Court in *Planned Parenthood v. Abbott*,[74] vacated *Abbott II* as moot under the *Munsingwear* doctrine.[75]

Judge Martin L.C. Feldman of this Court recently recognized these decisions and the uncertainty created as to the viability of *Big Tyme's* endorsement of *Jacobson* and *Abbott II*. In *New Orleans Catering, Inc. v. Cantrell*,[76] Judge Feldman addressed equal protection and substantive due processes challenges to Mayor Latoya Cantrell's executive orders imposing capacity restrictions on indoor gatherings. Judge Feldman agreed that "*Planned Parenthood* casts at least some doubt on *Big Tyme's* endorsement of the *Jacobson* analysis."[77] Judge Feldman thus proceeded under a traditional constitutional analysis "because of the questionable standing of *Big Tyme's Abbott*-based analysis post-*Planned Parenthood*, . . . [and] the increasingly significant debate as to *Jacobson's* value as a precedential matter, and because applying traditional constitutional analysis in lieu of *Jacobson*-style analysis makes no practical difference in this case[.]"[78]

As in *New Orleans Catering*, it is not necessary to decide whether *Jacobson* should apply because a *Jacobson*-style analysis would have no practical effect here. Plaintiff asserts claims under the Takings Clause, Due Process Clause, Equal Protection Clause, Dormant Commerce

---

[72] *Id*. at 466-68.
[73] *Id*. at 468.
[74] *Planned Parenthood*, ⸻ U.S. at ⸻, ⸻ S.Ct. ⸻, 2021 WL 231539 (2021)
[75] *Id*. at *1.
[76] 2021 WL 795979 (E.D. La. Mar. 2 2021)
[77] *Id*. at *4.
[78] *Id*. at *5.

Clause, and First Amendment. On the face of the Complaint, it is apparent that Plaintiff's claims fail as a matter of law under a traditional constitutional analysis. Because, as discussed below, Plaintiff cannot succeed on the merits of his claims under normally applicable constitutional standards, his claim for declaratory relief likewise fails and must be dismissed.

> **1.  Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the City's Public Health Guidelines Do Not Violate the Takings Clause.**

The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, prohibits the government from taking private property for public use without just compensation.[79] The Takings Clause does not apply, however, unless private property has been taken "for public use."[80] The Supreme Court has consistently held that there is no taking "for public use" where the government acts pursuant to its police power.[81]

In his complaint, Plaintiff does not allege that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 or any City public health guidelines constituted an impermissible taking by the City Defendants.  In fact, Plaintiff only alleges that the Governor's proclamation violates the Takings Clause.  Had Plaintiff properly asserted such a claim, it would still fail.  The City Defendants engaged in a valid exercise of police powers in issuing the public health guidelines in response to the COVID-19 pandemic. It is a "traditional exercise of the States' police powers to protect the health and safety of their citizens."[82]  Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 delegated to the Mayor the right and responsibility

---

[79] *See* U.S. Const. amend V., *see also Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017).
[80] U.S. Const. amend V.
[81] *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 491 (1987) ("'[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.") (citation omitted);
[82] *Hill v. Colorado*, 530 U.S. 703, 715 (2000).

15

to exercise police powers  necessary to protect lives in an emergency.[83] For takings claims, when the State acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause."[84] Accordingly, because Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the City's public health guidelines are an exercise of police power, as opposed to eminent domain power, Plaintiffs' takings claim would also fail as a matter of law.[85]

Moreover, Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines do not amount to a "taking" under a traditional constitutional analysis. There are two recognized categories of takings:  physical takings of property and regulatory takings arising from some government program or action.[86] A physical taking occurs only when the government "requires the landowner to submit to the physical occupation of his land."[87] Plaintiff does not allege that the City Defendants have physically occupied his Airbnb rental property or any other business mentioned by Plaintiff, so Plaintiff's "takings" claim could only be based on an alleged regulatory takings.

There are also two types of regulatory takings: categorical and non-categorical. A categorical regulatory taking involves "the extraordinary circumstance when no productive or economically beneficial use of [property] is permitted."[88] Thus, "[a]nything less than a complete elimination of value, or a total loss," is considered a non-categorical regulatory taking, which is

---

[83] *State v. Pearson,* 07-332 (La. App. 5 Cir. 12/27/2007), 975 So. 3d 646, 652.
[84] *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019) (citing cases, including *Mugler*, 123 U.S. at 668–69).
[85] The Eleventh Amendment bars Plaintiff's state takings claim. Regardless, Plaintiff's state takings claim fails due to Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249's roots in police power. *See* La. Const. art. I, § 4 (providing that the right to own, use, and enjoy property "is subject to reasonable statutory restrictions ***and the reasonable exercise of the police power***.") (emphasis added).
[86] *See Tahoe-Sierra Preservation Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002); *see also Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922) (recognizing, for the first time, a regulatory takings analysis).
[87] *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 527 (1992).
[88] *Tahoe-Sierra*, 535 U.S. at 327 (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1009 (1992)).

analyzed under the framework announced by the Supreme Court in *Penn Central Transportation Co. v. New York*.[89] Plaintiff appears to claim a non-categorical regulatory taking, alleging that the Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines "caused a diminution or loss in value of [his] property."[90]

In *Penn Central*, the Supreme Court identified three factors to consider when determining whether a non-categorical regulatory taking has occurred: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government action."[91] The Supreme Court emphasized that a taking "may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."[92] Applying these factors, a number of federal courts have rejected takings claims made in the context of COVID-19-related limitations on private businesses.[93]

Here, as discussed in the standing section above, Plaintiff cannot demonstrate that a noncategorical regulatory taking has occurred because Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 does not regulate short-term rental properties. But, even assuming Plaintiff can properly claim damages to his business due to regulations imposed on other businesses, i.e., crowd size limitations on bars and restaurants, Plaintiff still cannot show a taking

---

[89] *See* 438 U.S. at 130-31; *see also Lucas*, 505 U.S. at 1019-20 n.8.
[90] *See* Plaintiff's Complaint at 17.
[91] *Penn Central*, 438 U.S. at 124.
[92] *Id.*
[93] *See PCG-SP Venture I LLC v. Newsom*, 2020 WL 4344631, *10 (C.D. Cal. June 23, 2020); *see also TJM 64, Inc. v. Harris*, 2020 WL 4352756, at *6 (W.D. Tenn. July 29, 2020); *McCarthy v. Cuomo*, 2020 WL 3286530, *4 (E.D.N.Y. June 18, 2020); *Auracle Homes, LLC v. Lamont*, 2020 WL 4559692, *16 (D. Conn. Aug. 7, 2020); *Lebanon Valley Auto Racing Corp. v. Cuomo*, 2020 WL 4596921, at *9 (N.D.N.Y. Aug. 11, 2020); *Luke's Catering Serv., LLC v. Cuomo*, 2020 WL 5425008, *12 (W.D.N.Y. Sept. 10, 2020);

under the *Penn Central* factors. First, Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines do not prevent Plaintiff from making *any* economic use of his property, which he conceded in alleging only a diminution in rentals.[94] Second, the City's public health guidelines only contained temporary restrictions imposed on in non-essential businesses as opposed to an affirmative exploitation by the City Defendants. Third, through the issuance of Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines, the City Defendants have not "physically invade[d] or permanently appropriate[ed] any of [Plaintiff's] assets for his own use."[95] Accordingly, because Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines constitute a valid exercise of police power and is not a regulatory taking, Plaintiff's takings claim fails as a matter of law and should be dismissed.

### 2. The Modified Phase 3 Order does not violate the Dormant Commerce Clause.

The Fifth Circuit has held that "[s]tate regulations violate the dormant Commerce Clause by discriminating against or unduly burdening foreign or interstate commerce."[96] To determine whether a local law violates the dormant Commerce Clause, courts conduct a two-tiered analysis. First, it must be determined "'whether the challenged statute regulates evenhandedly with only 'incidental' effects on interstate commerce, or discriminates against interstate commerce either on its face or in practical effect.'"[97] If the law affirmatively discriminates against out-of-state interests, it is subject to stricter scrutiny and will be upheld only if it is necessary to achieve a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory

---

[94] *See Lamont*, 2020 WL 4559692, at *14-15; *see also Luke's Catering*, 2020 WL 5425008 at *2.

[95] *Connolly*, 475 U.S. at 225.

[96] *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 749 (5th Cir.2006).

[97] *Texas Manufactured Housing Ass'n, Inc. v. Nederland*, 101 F.3d 1095, 1101 (5th Cir.1996).

alternatives.[98] The term discrimination in this context means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.[99] Second, if the statute burdens interstate commerce incidentally, courts analyze it using the balancing test the Supreme Court set forth in *Pike v. Brace Church, Inc.*, 397 U.S. 137 (1970), and the law will be upheld as long as the State's interest is legitimate and the burden imposed on interstate commerce is not clearly excessive in relation to the putative local benefits.[100]

Plaintiff's claim fails under all of these theories. Plaintiff's Complaint contains no allegations that the complained-of COVID-19 restrictions treat out-of-state and in-state economic interests differently. Indeed, the restrictions in Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines apply only to businesses and individuals in New Orleans. As such, Plaintiff has not and cannot show that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines discriminates against out-of-state commerce either facially or in practical effect. Plaintiff also does not allege any specific incidental burdens on interstate commerce resulting from Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines.  Even assuming an incidental burden, Plaintiff cannot show that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines fail the *Pike* balancing test. As stated, the Fifth Circuit and this Court have recognized that Louisiana has an interest in protecting its citizens from the dangers of a pandemic. Plaintiff also has not alleged that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines imposes any burden on interstate commerce that is incommensurate with the local benefit of protecting the

---

[98] *Id*. at 1101.
[99] *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 100–101 (1994).
[100] *Id*. at 142; *see also Veritext Corp. v. Bonin*, 901 F.3d 287, 291 (5th Cir. 2018).

citizens of New Orleans from a global pandemic. Thus, Plaintiff's Dormant Commerce Clause claim fails as a matter of law.

>   ### 3. Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines do not violate the First Amendment.

Plaintiff's Complaint is devoid of any supporting allegations regarding the alleged violations of Plaintiff's rights under the First Amendment. As any allegations relating to purported First Amendment violations have not been pled in the Complaint, this Court should not consider those allegations.[101] Regardless, Plaintiff cannot show that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines infringes upon his First Amendment rights to freedom of assembly, which is "a right to associate physically . . . for the purpose of expressing ideas."[102]

The Supreme Court has recognized that the First Amendment protects a right of association in two lines of cases: first, the choice to enter into and maintain certain intimate human relationships is protected as an element of personal liberty; and second, to associate for the purpose of engaging in expressive activities protected by the First Amendment.[103] Plaintiff's claim is possibly based on the second line of cases, asserting that he has a general right to associate with others in pursuit of social, cultural, and similar ends.[104] But the Constitution does not include a "generalized right of 'social association.'"[105] Rather, the types of associations protected by the

---

[101] *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011) (noting that when ruling on a motion to dismiss under Rule 12(b)(6), a court may generally only consider factual allegations contained within the "four corners" of the complaint).
[102] *Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir. 1985).
[103] *City of Dallas v. Stanglin*, 490 U.S. 19, 22–24 (1989).
[104] *See* Plaintiff's Complaint at 15.
[105] *City of Dallas*, 490 U.S. at 25

First Amendment must be sufficiently intimate, such as marriage, child rearing, and living with relatives.[106]

And while First Amendment protection of social association is not limited to family relationships, the Supreme Court and Fifth Circuit have recognized that it is limited to relationships, such as those between members of a private club, "that presuppose 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'"[107] Here, Plaintiff does not even identify how he has been deprived of social association, much less how any alleged association is sufficiently intimate to warrant First Amendment protections. And to the extent Plaintiff contends that the cancellation of Mardi Gras and Jazz Fest deprives him of social association, the Supreme Court has held that such associations do not come within the ambit of First Amendment protection.[108] Accordingly, Plaintiff cannot state a claim that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines violates the First Amendment as a matter of law.

### 4. Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines do not violate the Equal Protection Clause.

Plaintiff cannot show that the distinction between "essential" and "non-essential" businesses violates equal protection. To prove an equal protection claim, Plaintiff "must show that

---

[106] *Board of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (listing cases).

[107] *Wallace v. Texas Tech University*, 80 F.3d 1042, 1052 (5th Cir. 1996) (citing *id.*); *Louisiana Debating and Literary Assoc. v. City of New Orleans*, 42 F.3d 1483, 1497–98 (5th Cir.1995) (holding that associations in some private clubs are protected).

[108] *City of Dallas*, 490 U.S. at 25 ("[W]e do not think the Constitution recognizes a generalized right of 'social association' that includes chance encounters in dance halls.").

'two or more classifications of similarly situated persons [are] treated differently'" by Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines.[109] "Once that threshold showing is made, the court determines the appropriate level of scrutiny for [ ] review. 'If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relationship to a legitimate governmental purpose.'"[110]

Though unclear, Plaintiff alleges that the classification distinguishing between "essential" and "nonessential" businesses violates equal protection,[111] but he does not assert that this distinction implicates fundamental rights.[112]  And because Plaintiff does not purport to be a member of a suspect class, the classification between essential and non-essential businesses does not "run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."[113]  In assessing the relationship, moreover, this Court must presume that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines is constitutional and require Plaintiff to "negate every conceivable basis which might support those orders."[114]

Again, it is unclear as to exactly what Plaintiff is asserting when he claims that different businesses are being treated differently.  Wat is clear is that Plaintiff has failed to allege that the distinction between "essential" and "non-essential" businesses is not rationally related to the goal of preventing the spread of COVID-19. In *Big Tyme,* the Fifth Circuit found that distinctions

---

[109] Big Tyme, 985 F.3d at 468 (quoting Gallegos-Hernandez v. United States, 688 F.3d 190, 195 (5th Cir. 2012) (per curiam)).

[110] *Id*. (quoting *Butts v. Aultman*, 953 F.3d 353, 358 (5th Cir. 2020)).

[111] *See* Plaintiff's Second Amended Complaint at 5, 7, 14.

[112] Courts in this circuit refuse to classify economic liberties as fundamental rights.  *910 E Main*, 481 F.Supp.3d at 620; *see also New Orleans Catering*, 2021 WL 795979 at *7.

[113] *Big Tyme*, 985 F.3d at 469 (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)).

[114] *Armour v. City of Indianapolis*, 566 U.S. 673, 681 (2012).

between bars and restaurants in COVID-related Emergency Proclamations did not violate equal protection. In so ruling, the Fifth Circuit wrote that "a classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality."[115] Rather, "[i]mperfect classifications that are underinclusive or overinclusive pass constitutional muster."[116] Here, Plaintiff offers no allegations as to how the distinction between "essential" or "non-essential" would fail a rational basis review. Thus, the equal protection claims should be dismissed.

### 5. Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-  0249 and the public health guidelines do not violate the Cue Process Clause

Plaintiff cannot state a viable substantive or procedural due process claim as a matter of law. Again, in Counts 3 and 4 of the Complaint, Plaintiff only refers to actions by the Governor and not those of the City Defendants. Even had the Plaintiff done so, they would also fail. It is well established that a person is not entitled to procedural due process protections against government action that is legislative in nature.[117] A government action is legislative if it has "general application" and looks to the future.[118] Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines are plainly legislative in nature because it applies prospectively and generally to all citizens of the City of New Orleans.[119] Further, the Supreme Court has determined that "summary administrative action may be justified in emergency situations," and the "deprivation of property to protect the public health and safety is

---

[115] *Big Tyme*, 985 F.3d at 470 (citing *Veritext Corp. v. Bonin*, 901 F.3d 287, 291 (5th Cir. 2018)).

[116] *Id*.

[117] *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915).

[118] *Id*.

[119] The Governor has not made law, however, merely because of the legislative nature of the Modified Phase 3 Order. Rather, under the LHSEADA, the Governor's Proclamations have the "force and effect of law." *See* La. R.S. § 29:724(A).

'[o]ne of the oldest examples' of permissible summary action."[120] Accordingly, Plaintiff's procedural due process challenge fails as a matter of law.

Plaintiff's substantive due process challenge likewise fails. The doctrine of substantive due process protects individuals against government action that interferes with a **fundamental liberty interest**.[121][122] The liberty interest Plaintiff asserts is his right to make use of his short-term rental license by renting out his Airbnb to unnamed "tourists" without restriction. Neither Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 nor the current public health guidelines directly regulate the use of short-term rental property. Regardless, as stated, neither the Supreme Court nor the Fifth Circuit have classified economic liberties as fundamental rights.[141] Any right that Plaintiff has to maximize profits on his short-term rental license is, therefore, subject to the deferential "rational basis" review applicable to economic regulations.[123] As explained above, because Plaintiff does not and cannot dispute that Mayoral Proclamation of a State of Emergency Due to COVID-19, 2020-0249 and the public health guidelines are related to the to the City's legitimate goal of curbing the spread of COVID-19, his substantive due process claim fails as a matter of law.[124]

---

[120] *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc*., 452 U.S. 264, 300 (1981).

[121] *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997).

[122] *E Main*, 481 F.Supp.3d at 620.

[123] *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (if a right is not fundamental, then the law that allegedly burdens the right is ordinarily subject to rational basis review).

[124] Multiple courts have held that, even after the decision in *Roman Catholic Diocese, Jacobson* still sets forth the proper standard of review to judge COVID-related restrictions that do not impact free exercise of religion claims. *See Hopkins Hawley LLC v. Cuomo,* 20-10932 (S.D. N.Y. Feb. 9, 2021), 2021 WL 465437, *5 (finding that *Jacobson* "govern[s] this case" in which plaintiff alleged, *inter alia,* Fourteenth Amendment violations);  *Forbes v. County of San Diego,* 20-00998 (S.D. Calif. March 4, 2021), 2021 WL 843175, * 4 (applying *Jacobson* to "substantive due process claim[s]").   And under *Jacobson,* Plaintiffs cannot credibly dispute that the challenged COVID-related Proclamations had a real or substantial relation to a public health crisis.

## <u>CONCLUSION</u>

For the foregoing reasons, the City Defendants respectfully request that this Honorable Court dismiss Plaintiff's Complaint in its entirety, with prejudice, pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

*/s/ Mark D. Macnamara*
**MARK DANIEL MACNAMARA, La. Bar No. 24532**
ASSISTANT CITY ATTORNEY
DMACNAMARA@NOLA.GOV
**CORWIN M. ST. RAYMOND, La. Bar No. 31330**
DEPUTY CITY ATTORNEY
CMSTRAYMOND@NOLA.GOV
**CHURITA H. HANSELL, La. Bar No. 25694**
CHIEF DEPUTY CITY ATTORNEY
 CHHANSELL@NOLA.GOV
**DONESIA D. TURNER, La. Bar No. 23338**
SR. CHIEF DEPUTY CITY ATTORNEY
DONESIA.TURNER@NOLA.GOV
**SUNNI J. LEBEOUF, La. Bar No. 28633**
CITY ATTORNEY
SUNNI.LEBEOUF@NOLA.GOV
1300 Perdido Street, Room 5E-03
New Orleans, Louisiana 70112
Telephone: (504) 658-9802
Facsimile: (504) 658-9868
*Counsel for City Defendants*